Good morning, everyone. Welcome. Our first case this morning is United States v. Pankow, case number 17-1337. Ms. Christensen, good morning. Good morning. May it please the Court, Counsel, my name is Joanna Christensen and I represent the appellant Jaimie Pankow in this matter. The District Court committed a series of procedural errors during the sentencing hearing, stemming from the Court's deviation from the sentencing procedures outlined by the Supreme Court in the sentencing guidelines. In general, there's a three-step process after Booker that I'm sure this Court is aware of. Consider, calculate the advisory guideline range, consider whether guidelines should be adjusted by departure, and then consider the 3553A factors. The District Court certainly did the first step, calculating the advisory guideline range, and it's the second step that went a little astray in this case. Before you get into the merits of that argument, I'm a little concerned about the consequences of a remand. Have her state cases been resolved? Her state cases have been resolved. And those convictions would count in a recalculated criminal history? A good portion of them were dismissed. The one that she would have received credit for, that she was in custody for, I believe she got time served on that one. So, we have discussed the possibility of that, and she is aware that that could be a possible consequence. Okay, that's what I wanted to confirm. Okay, yes. The first step, of course, is the Court's failure to specifically rule on the 5K motion at the sentencing hearing. The Court said that she should get some consideration for her cooperation, and then said that her cooperation would be considered, but then conflated that with acceptance of responsibility. The failure to rule on the 5K motion itself is an issue. Isn't the ruling implicit in what the judge said about wanting to give her credit for her cooperation? I'm not sure. Taken together with the written statement of reasons where there's an explicit ruling? Right, that's certainly explicit. The implicit brings in the concept of acceptance of responsibility in addition or instead of cooperation, and that's one problem. The other issue is that the Court didn't specifically mention many of the factors in granting a 5K departure, which are different, of course, than both acceptance of responsibility and 3553A factors. Now, in this case, the Court clearly considered mitigation and the 3553A factors. We're certainly not arguing the Court failed to consider that. But the failure comes at that 5K process, the departure process, which is still cognizable in this Court, even though departures in general are obsolete. The Court has never said that 5K departures are obsolete because they have a purpose above and beyond the other departures considered by the guidelines. So the findings, the Court talked a little bit about timeliness of the cooperation, but didn't talk about the significance and the truthfulness, completeness, nature, and extent of the injury or risk of injury that she put herself in. Do we have cases that say you really need to do that? Certainly, it's part of the guidelines.  The Zingsheim case deals with the Court's failure to make a ruling on it, which necessarily included failure to make any findings on it. The consideration is much narrower for 5K, and that's certainly part of the guideline construct. And this Court said fairly recently, in a case that I'm not remembering the name of, that when talking about a 5K motion, the District Court should not talk about extraneous matters. So I think that that necessarily means that they are two separate considerations. How do you reconcile that with the approach that we took in the Brown case to sentencing after Booker? It seems that after Brown, as long as we can follow what the District Court did and are comfortable with that he did in fact touch all bases, end of case. I certainly think that that's a factor. There are cases kind of everywhere from that. And then when you have Guyton talking about the changes to the guidelines that they made after this Court had talked about departures being obsolete. How about the revision to Section 1B1.1? Yes. The section has been revised and seems to talk about there being a step-by-step process. Is that applicable here? I think so. Guyton, of course, was a 3582 case, but it is talking about the way the sentencing guidelines changed regarding departure and specifically lays out this process, the three-part process. I'm just wondering how you can reconcile Judge Hamilton's note in Guyton with Brown. I'm having difficulty with that. I struggle with that as well. I certainly agree with that, Your Honor, because I think there are cases on both sides of that issue. There are still cases post-Brown, post-Guyton talking about departures being obsolete. And then there are cases that talk about certainly 5K departures not being obsolete, being still very much alive and requiring additional findings. And I apologize for not being able to remember the name of the case. I can look it up in my brief. Do you view Brown as saying, well, this approach that was taken in Brown passes muster as opposed to saying this is the preferred approach? Would that be a principled way to try to reconcile Guyton and Brown? I think so. It comes down to this court's review, essentially. And going back to say if this court can conduct a meaningful review, then the process was probably good enough. But if the court cannot conduct that meaningful review, then it does go into whether you can look at the sentence and say this is what the district court did. And I'm not sure if you read the court's reasoning you can do that. Well, let's pursue that a little bit, if we may. If you read Judge Peterson's sentencing transcript from beginning to end, isn't it possible to say have a comfort level that, yes, he knew everything that was on the table and, indeed, he touched all those bases? The simple fact is he thought this was the appropriate sentence. He needed to keep her on ice that long. Right. I think he certainly thought 84 months was an appropriate sentence. The difficulty is that it's just not clear how much she got for 5K, how much she got for the credit. And those are the two that really need to be clear because they have implications later on, possibly. Such as? The 3582 needs to be calculated with regards to how much was given for a 5K and a credit. If he really did mean to give her the credit and sentence her, as he said, you know, I realize your sentence will start today. And that means your real sentence was approximately the beginning of the guideline range. I'm not sure if that accounts for the 5K at all. The court did not specifically address the government's argument to start higher than the guideline range when calculating the 5K. And that's an issue as well. If this were to come back for 3582, which is speculative, but of course we never know. And certainly none of us could have predicted all of the crack cocaine changes 5, 10 years beforehand. But also 35B, which is specifically contemplated by her plea agreement. So it does matter to a certain extent. Even if the court said this is the sentence she should get. And the court may still do that. It's the findings that we're concerned about because it can have implications later on. So unless the court has questions, I will reserve the remainder of my time. Thank you. Mr. Graber. Good morning, Your Honors. May it please the court. My name is Dan Graber. I'm the assistant U.S. attorney that handled this case. Below, I handled all 19 defendants on this methamphetamine conspiracy case. Your Honors, first of all, to address your question, Judge Sykes, she'll be a career offender. She pled to two. She's got 15 CF-61 possession with intent to distribute would count. She also pled to 15 CF-239 delivery of methamphetamine. So those are going to impact her and put her up where a lot of other people were with pretty much life, based on the amount of methamphetamine involved. Put simply, as you mentioned, Judge Peterson did it right. He followed the procedural framework in this case set forth by the Supreme Court and Gall and Rita. He properly calculated the advisory guidelines. He invited the parties to allocute and listen to their arguments for sentencing, and then he applied 3553A factors and imposed a sentence. He gave an explanation of his sentence that allows this court to know that it was well-reasoned and based on logical and consistent application of 3553A and that he considered all the parties' arguments. The argument is that we can't tell from the record the quantification of the 5K credit for substantial assistance, and Ms. Christensen is telling us that that has consequences, or at least potential consequences for future additional assistance motions, which is all speculative. Correct. Or sentence reductions based on changes to the guidelines. Are those real-world consequences for the lack of a record on that quantification? So two points I'd like to address. One, the law is you don't have to give the number. The procedural error exists when the district court doesn't give you enough of an explanation of its reasons when it pronounces sentence. Two, as you mentioned, Judge, reconciling the footnote in Guyton v. Brown, Maxfield, and Lucas, you can reconcile the two. What this court is saying is, look, after Booker, guidelines are not mandatory. They're advisory. Therefore, formal departure analysis is not required. It's obsolete. However, as pointed out in all of these cases in 2012, 13, and 16, you can use the district court can go to the guidelines departure provisions for guidance when it's fashioning what it wants to do, but in the end, it's the 3553 factors, and does the court do that? Here, he did do that. Right. I understand that, but what about the future consequences? To get back to my more precise question, is a future additional cooperation motion keyed to the original guidelines calculation, or does it depend in some fashion on how much credit she got for substantial assistance under 5K? Correct. Well, those are two different things, so they can't both be correct. Is it keyed to the original guidelines, either a sentence reduction because of a reduction in the guideline range, or a future cooperation sentence reduction? Is that keyed to the original guidelines range or the ultimate sentence, or does it matter that there's not a quantification of how much credit she got for 5K? I guess that's what I'm trying to say. It doesn't matter. What this court is saying is it doesn't matter. The court, the judge did a 3553A analysis and decided I'm baking into that credit for the 5K. I'm also baking into that the state court pretrial detention time of one year, and I'm coming out down at 84 months, and that's all that the law requires. In other words, you gave her a little bit for each? Is that what you're saying? What he said is I'm giving you 84 months, and then he said in that I'm giving you credit for the time that you spent in state custody, even though he didn't have to because under 5G 1.3 it didn't matter, and he said I'm giving you credit for cooperation, and they argue that there was some conflation between acceptance and cooperation, but that wasn't the case. If you look at the context, he was talking about the timeliness issue because the defense attorney in his allocution was bringing up the fact that Ms. Pankow originally wasn't a real enthusiastic member of Team America, but she came around and he was trying to explain that. I still don't see how he unbundled the 5K 1.1 and giving her credit for time served. At any point in that transcript, I just don't see how he unbundled it. He followed the steps that the defense attorney asked him to follow, which again is another reason why there's no procedural error and why we're making the waiver argument or at least a forfeiture argument. The defense attorney said start with the guidelines, then give her 13 months off for state credit for time served, and then give her two years off for 5K. So when Judge Peterson was announcing the sentence, and you read the transcript, you'll see, he says I'm giving you the sentence, I'm looking at the two big 3553A factors. One, I want to be fair to the similarly situated defendants in the 19-defendant conspiracy, and she starts at 13 years. Graber's right that she's a second-tier distributor, and she said start at 13. But then I'm going to mitigate under the second factor because she has had this horrible life of abuse and addiction, and I'm going to go back down, and I'm going to land on 84. And then he says, I'm recognizing that you're getting credit for the state time, and I'm recognizing that you're getting the 5K and that it is substantial, even though you didn't start out real strong, you ended strong on 5K. So he hit three of the five factors under 5K, the significance of the cooperation, the nature of it, extent of cooperation, and the timeliness. And that's what counts when you're doing your review, is it a meaningful analysis. That's what counts. Quite honestly, if you send it back down and you tell him break it out, he breaks it out, that doesn't help her at all. That doesn't help her because she can't appeal. You have no jurisdiction. She can't get into the extent of the departure anyway. That's why I cited the Senn case. It doesn't help her. Moreover, as I said, she waived the argument to begin with by saying, judge, do it this way. The judge did it that way. They didn't object when the judge at the end of the sentencing said, is there anything else? Bill Jones didn't object and say, no, Your Honor, you did it wrong. You didn't give her the numbers. I don't know what your 5K is. I don't know what your state credit is. He never objected. So the bottom of her range was what? She was 108 to 135, and he gave her 84. So he dumped it down 24. So he dumped it off two years. Without saying how much is for? Correct. And what he said is, Graver, you're right, starting it at 13 years, which was 156. She's got a really big mitigation, and I'm going to get her down to 84, and I'm taking into account state credit and 5K to get you down to 84. And he said, if you notice, he talks about by me giving you that credit, you're getting down to near the low end, which is 108. So if you go, you know, I set the ceiling at 156, 15, and then I said, don't go below 120 because nobody's going below 120. If you take 120 and dump off a year, you're at 108. If you dump off two years, then you're at 84, which is exactly where he ended up. So the point being, and I guess the last point is, the procedural posture with the 3582, which was all guessing, the procedural posture in this case is at least they can't prove plain error. If you're not going to do the waiver, it's forfeiture, and they can't do plain error. They can't show that this woman received a sentence two years under the low end of the guidelines. There's no way she can show substantial effect on her rights and or that the fairness integrity of the judicial system was somehow impugned. Judge Peterson did it the right way. He followed the steps he was supposed to follow under the procedural framework set forth in Rita and Gall, and he gave really good reasons as to why he was doing what he was doing. Yeah, there's no question about the fulsomeness of his analysis of an appropriate sentence. That was well explained. It's the failure to slice and dice it about how much for this and how much for that. Judge, we never get that. The judge never says, you know, I'm going to give you this much for this, and I'm going to give you this much for this, and I'm going to give you this much for this. What they do is impose sentence, and as here, he didn't give you the amounts, but what he gave you was the reasons why he was doing what he was doing, and that allows for meaningful appellate review, which is the end of the year. Counsel, could you give us your view on the tension between the Brown case and the footnote in the Gaijin case? So Brown was in 2013, and then we've got Lucas in 20. You've got Maxfield after that in 2016. I don't think there is a tension, Judge, because I think the cases afterwards say the following. Departure analysis is obsolete. However, we encourage the district judges to look at departure provisions in the guidelines for guidance. It's still there for guidance, but it's not mandatory anymore. When you're doing your 3553A analysis, look to that to see whether it's proper or not, and in the end, give us a reasonable explanation that shows that you've given us a well-reasoned and thoughtful analysis under 3553A, and if you've done that, then you've done your job. I'm sorry. Was the first case, the 16 case you mentioned, Maxfield? So, yes, Your Honor. I cited him in my brief. Yeah, I've got this citation here. I just didn't hear you. Yeah, so Maxfield is a 2016 case, which is just the latest iteration on Lucas and Brown, which are all along this line of cases saying, look, departure analysis is obsolete. So your view is Maxfield solves the problem? I think that this court is coming to the position that what was originally stated in the footnote in Guyton is now brought up and not dicked anymore, and it's now, hey, this is the law in the Seventh Circuit, and it certainly isn't the position they're taking, which is that you've got to have this sequential, step-by-step guidelines analysis done, because that's not the case anymore. It's the 3553 analysis. You certainly look at the guidelines for guidance, but what matters, because the Supreme Court's told us under Rita and Gall, do a 3553 analysis and make sure that you give us enough reasons so that we know that it was well-reasoned and that you considered all the arguments of the parties. Thank you. Thank you, Your Honor. Thank you. Ms. Christensen. I will address the waiver argument first. There was no waiver in this case. The defense counsel asked the district court to do something in particular. The district court did not follow defense counsel's request and did its own thing. If defense counsel had objected further, that would merely be an exception, not an objection, and there's no need to when the district court has clearly rejected what defense counsel asked for. So it is de novo review. Although if the court had made a significant ruling on the substantial assistance, that would not be reviewable. It's not reviewable now because we don't know if the court relied on impermissible factors or not. Well, this is not a substantive challenge. This is a procedural challenge, and there was no objection to the procedure. While there was a substantive approach that was proposed by the government and by the defense, the judge rejected both and, as you said, did his own thing. And what we have now is this procedural challenge, and there's at least a forfeiture of the procedural challenge because there was no objection placed on the record to the judge's failure to allocate a certain amount of credit for 5K or quantify how much of the below guideline sentence was attributable to the 5K. So there should have been an objection to that, and this is the kind of thing that could easily have been addressed had there been an objection. Correct. Correct. I also would like to just, I know my time is up, but Williams is the case that I was referring to, talking about the 5K factors being considered by the district court. I will also note that Maxfield does not address 5K departures, and while departures are obsolete in general, certainly the government does not want 5K departures to be obsolete since it's a significant prosecutorial tool, and the court still needs to make findings regarding the 5K. Unless the court has further questions, we ask for you to reverse and remand. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.